NUMBER 13-07-739-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RICHARD HUFF, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Vela



 Appellant, Richard Huff, pleaded no contest without the benefit of a plea-bargain
agreement to the offense of aggravated assault with a deadly weapon. See Tex. Penal
Code Ann. § 22.02(a)(2) (Vernon Supp. 2008). After finding that Huff had been previously
convicted of one felony offense, the trial court assessed punishment at fifty years'
imprisonment. Huff brings two issues for review. We affirm.

I. Background


 Huff was indicted on February 15, 2007, for committing aggravated assault by
stabbing his wife, Robin Huff, with a knife. On May 1, 2007, Huff's defense counsel filed
a motion for a mental examination and a pretrial hearing on his competency to stand trial. 
Afterward, the trial court ordered Huff to undergo a psychiatric examination with Raul
Capitaine, M.D., a forensic psychiatrist, to evaluate his competency to stand trial. On June
13, 2007, Dr. Capitaine filed a written report which showed that Huff had a mental illness
since he was fourteen years old and was hospitalized several times per year for mental
illness until age twenty-six. He was last hospitalized in January 2006. Dr. Capitaine
diagnosed Huff with "Bipolar 1 Disorder. Most Recent Episode Mixed. Severe with
Psychotic Features" and "Polysubstance Abuse, in remission in a controlled environment." 
Dr. Capitaine found Huff competent to stand trial and found no evidence of mental
retardation. 

 Huff's plea hearing occurred on November 27, 2007, at which the trial court asked
Huff, among other things, if he signed and initialed all of the plea paperwork, if he signed
the plea papers freely and voluntarily, and if he understood that by entering his plea, he
was giving up his right to a jury trial. Huff affirmatively answered these questions. Huff
pleaded "No contest" to the allegation in the indictment and pleaded "True" to the allegation
that he had a prior felony conviction. Huff affirmed that he was entering his pleas freely
and voluntarily and that he understood that the judge could find him guilty. When the trial
court asked defense counsel if he believed that Huff was mentally competent to appear in
court and enter the pleas, counsel stated, "[I]t is my opinion that he has dramatically
improved since February of this year [2007], and it is my opinion he's been able to assist
me in preparation for today's hearing. I believe he is competent to stand trial at this time." 
The trial court accepted the pleas, received Huff's judicial confession and stipulation into
evidence, and heard testimony.

 The victim testified that on the morning of February 9, 2007, while driving Huff to do
laundry, Huff asked if she wanted a divorce. Before she could reply, he told her, "I'll end
this whole thing right here. I will slit your throat and kill you.'" He pulled out a knife and told
her to pull over. When she pulled over, Huff started stabbing and choking her. She then
heard Huff call 9-1-1. He stabbed her eleven times on her chest, neck, and back. 

 Huff testified that he had been mentally ill since the age of fourteen and was
hospitalized two or three times a year until the age of twenty-six when he realized that he
needed to take his medication in order to "function." When defense counsel asked him
about the stabbing of Robin, Huff responded that he "[J]ust got out of control." He said that
after he saw what had happened, he called 9-1-1. He denied choking her.

 After hearing all of the testimony, the judge found Huff guilty, found the
enhancement allegation to be true, and assessed punishment at fifty years' imprisonment.

II. Discussion


 By his first issue, Huff argues that the trial court violated his Due Process rights
under the Fourteenth Amendment to the United States Constitution by not holding a
hearing when evidence sufficient to raise a bona fide doubt concerning his competency to
stand trial became evident. We apply an abuse-of-discretion standard when reviewing a
trial court's failure to conduct an inquiry into a defendant's competency to stand trial. 
Montoya v. State, No. PD-0239-08, 2009 WL 1873354, at *5 (Tex. Crim. App. July 1,
2009). In applying this standard, "An appellate court does not substitute its judgment for
that of the trial court, but rather determines whether the trial court's decision was arbitrary
or unreasonable." Id.

 A. Applicable Law

 The code of criminal procedure prohibits a trial court from accepting either a guilty
plea or a plea of nolo contendere "unless it appears that the defendant is mentally
competent. . . ." Tex. Code Crim. Proc. Ann. art. 26.13(b) (Vernon 2009). A defendant
must also be mentally competent to be sentenced. See Casey v. State, 924 S.W.2d 946,
949 (Tex. Crim. App. 1996) (stating that sentencing is part of trial and competency
considerations apply). Under article 46B.004 of the code of criminal procedure, (1) a trial
court's inquiry into a defendant's competence may be informal. Montoya, 2009 WL
1873354, at *4. This allows the trial court to informally determine whether the defendant's
behavior during a proceeding indicates a lack of rational understanding. Id. The Montoya
court stated that bona fide doubt is "the proper standard for determining whether a trial
court should conduct an inquiry." Id. If a trial court has a bona fide doubt about the
defendant's competency, it "shall conduct an informal inquiry to determine if there is
evidence that would support a finding of incompetence." Id. "A bona fide doubt may exist
if the defendant exhibits truly bizarre behavior or has a recent history of severe mental
illness or at least moderate mental retardation." Id. 

 Article 46B.003 provides that a person is incompetent to stand trial if the person
does not have: "(1) sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding; or (2) a rational as well as factual
understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art.
46B.003(a)(1) (2) (Vernon 2006). This statute "specifies the defendant's present ability.
. . . [P]ast mental-health issues raise the issue of incompetency only if there is evidence
of recent severe mental illness, at least moderate retardation, or bizarre acts by the
defendant." Montoya, 2009 WL 1873354, at *4 (emphasis in original); see Moore v. State,
999 S.W.2d 385, 395 (Tex. Crim. App. 1999). (2) "The considerations when evaluating
competency to stand trial include the defendant's level of understanding of the proceeding
and ability to consult with counsel in preparation for the proceeding." Montoya, 2009 WL
1873354, at *4. "Thus, those who observed the behavior of the defendant at the hearing
. . . [are] in a better position to determine whether . . . [the defendant is] presently
competent." Id.; see McDaniel v. State, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003)
(stating "We cannot ignore the trial court's first-hand factual assessment of appellant's
mental competency. His factual findings, that appellant understood the nature of the
proceedings and assisted his counsel in his defense, are entitled to great deference by the
reviewing court.").


 B. Analysis

 Dr. Capitaine found Huff competent to stand trial. Furthermore, the record reflects
no indication of recent severe mental illness, moderate retardation, or truly bizarre acts,
and there was no suggestion by Huff's defense counsel, the prosecutor, or the trial court,
all of whom saw Huff's behavior at the plea hearing, that Huff appeared unable to
understand the proceedings. The record showed that Huff had the sufficient present ability
to consult with his lawyer with a reasonable degree of rational understanding and had a
rational as well as a factual understanding of the proceedings against him. See Tex. Code
Crim. Proc. Ann. art. 46B.003(a)(1) (2). Giving proper deference to the trial judge's
determination based on his ability to see Huff's behavior, we conclude that because
evidence did not come to the trial court's attention suggesting that Huff may have been
incompetent to stand trial, the trial court did not abuse its discretion by failing to determine
by informal inquiry whether there was some evidence from any source that would support
a finding that Huff was incompetent to stand trial. See Montoya v. State, No. PD-0239-08,
2009 WL 1873354, at *5 (Tex. Crim. App. July 1, 2009). Issue one is overruled.

 By his second issue, Huff argues his right to a proper determination of his
incompetency to stand trial was violated because the trial court failed to follow the
mandatory procedures of Chapter 46B of the code of criminal procedure once evidence
suggesting he was incompetent to stand trial came to the trial court's attention. If, after an
informal inquiry, the court determines that evidence exists to support a finding of
incompetency, the court shall order an examination to determine whether the defendant
is incompetent to stand trial. Id. art. 46B.005(a) (Vernon 2006). Generally, if the court
determines that evidence exists to support a finding of incompetency, the court shall hold
a hearing before determining whether the defendant is incompetent to stand trial, and, on
the request of either party or on the court's motion, a jury shall make the determination with
respect to whether the defendant is incompetent. Id. arts. 46B.005(b), 46B.051. (Vernon
2006).

 Here, the trial court ordered an examination to determine whether Huff was
incompetent to stand trial. Dr. Capitaine evaluated Huff and determined that he was
competent to stand trial. Because evidence did not come to the trial court's attention
suggesting that Huff may have been incompetent to stand trial, the trial court did not violate
the mandatory procedures set forth in chapter 46B of the code of criminal procedure. 
Issue two is overruled.

III. Conclusion


 The trial court's judgment is affirmed.

 

 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 20th day of 2009.
1. Article 46B.004 provides:


 (a) Either party may suggest by motion, or the trial court may suggest on its own motion, that
the defendant may be incompetent to stand trial. A motion suggesting that the defendant
may be incompetent to stand trial may be supported by affidavits setting out the facts on
which the suggestion is made.


 (b) If evidence suggesting the defendant may be incompetent to stand trial comes to the
attention of the court, the court on its own motion shall suggest that the defendant may be
incompetent to stand trial.


 (c) On suggestion that the defendant may be incompetent to stand trial, the court shall
determine by informal inquiry whether there is some evidence from any source that would
support a finding that the defendant may be incompetent to stand trial.


Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon 2006).
2. In Moore, the court stated:


 Prior hospitalization . . . do[es] not per se warrant the court impaneling a separate jury to
conduct a competency hearing. To raise the issue of competency by means of the
defendant's past mental health history, there generally must be evidence of recent severe
mental illness or bizarre acts by the defendant or of moderate retardation.


Moore v. State, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999).